UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MODERN TECHNOLOGIES GROUP, INC. AND ERIC ALPERT, | : | Hon. Joseph H. Rodriguez |
| | : | |
| Plaintiffs, | | Civil Action No. 09-3393 |
| v. | : | |
| TWIN CITY FIRE INSURANCE CO., | : | |
| | | OPINION |
| Defendants. | : | |

Presently before the Court are two separate motions of the parties for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant Twin City Fire Insurance Company ("Twin City") moves for summary judgment [14] as to all of the claims, while Plaintiffs Modern Technologies Group, Inc. ("MTG") and Eric Aplert ("Alpert") move for partial summary judgment [17] on the issue of coverage. Oral argument on the motions was heard on September 21, 2010. For the reasons expressed on the record of that day, and for those that follow, Defendant's motion for summary judgment is granted.

## I. Procedural History

MTG and Alpert are insureds under a policy of a professional liability insurance policy (the "policy") issued by Twin City. Plaintiffs manufacture and distribute after-market automobile parts for limousines. Plaintiffs were sued by a former business associate, RNC Systems Inc. ("RNC"), in two separate actions, commonly alleging, inter alia, breach of contract and other commercial torts. Declaration of Sarah Katz ("Katz Decl.") Exs. E and F. The first action, entitled RNC Systems, Inc. v. Lumenythe International Corp., Peter Costigan, MTG and Alpert, was filed on December 21, 2007 in the Superior Court of the State of California, County of Orange. Id., Ex. F. The second

action, entitled <u>RNC Systems, Inc. v. Modern Technologies Group and Eric Alpert</u>, was filed on February 26, 2008 in the United States District Court for the District of New Jersey, Camden Vicinage. <u>Id.</u>, Ex. E.

Plaintiffs sought coverage under the policy with respect to these two liability actions brought against them in California and New Jersey. Twin City denied coverage solely on the ground of late notice. Plaintiffs initiated the present action seeking a declaration of coverage in the Superior Court of New Jersey, Burlington County against Twin City and Commerce Insurance Services. Defendants removed the matter to this Court on July 10, 2009. Then, Plaintiff filed an Amended Complaint, naming only Twin City as a defendant. Now, both parties move for summary judgment.

## II. Background

For the most part, the facts are not in dispute. Instead, the parties disagree over the proper interpretation of the operative insurance policy. During the course of the business relationship between the parties, the original policy was renewed twice to cover a range of time between March 15, 2006 through June 15, 2009. The initial policy covered the time period from March 15, 2006 through June 15, 2007 ("2006-2007 policy" or "Expired Policy"). This policy was renewed and governed the time between June 15, 2007 through June 15, 2008 ("2007-2008 policy" or "Renewal Policy"). The 2007-2008 policy was again renewed for another year, covering the time between June 15, 2008 through June 15, 2009 ("2008-2009 policy" or "Second Renewal Policy"). The parties agree that the 2007-2008 policy governs this action.

Twin City claims that the operative policy is a "claims made" policy that requires strict enforcement of the notice provision of the policy. Here, the claims in California

and New Jersey arose during the 2007-2008 policy; this policy expired on June 15, 2008. Twin City contends that because MTG did not report the claims to it until almost 90 days after the applicable policy expired, coverage is not available. But Plaintiff states that it made an attempt to report the claim in August 2008 when Alpert contacted the broker. Ex. A, Alpert Dep. 13:22-14:12. Alpert also telephoned Twin City in September 2008 to report the claims. Id., 14:19-14:25, 35:4-38:4.

Twin City acknowledges in a letter that it received notice of the claims on September 8, 2008. Ex. G, Tortora Dep. According to Twin City, the window to file a claim under the 2007-2008 policy closed on August 15, 2008. The parties agree that the filing of the California claim triggers the notice provision of the policy and that Plaintiffs did not report the claim to Twin City until after that policy expired in September 2008.[1] As a result, Twin City argues that its denial of coverage was justified pursuant to Zuckerman v. National Union Fire Insurance Co., 495 A.2d 395, 100 N.J. 304 (1985), which held that the notice provision of a "claims made" policy should be strictly enforced.

Plaintiffs reject Defendant's characterization of the policy as "claims made" and, as a result, argue that Zuckerman is inapplicable. Rather, Plaintiffs argue that because the policy does not provide "claims made" coverage, Twin City must demonstrate that it

---

[1]The parties agree that because of the Interrelationship of Claims provision in the Policy, the commencement of the New Jersey action relates back to the date of the inception of the California action, causing the earlier date of December 21, 2007 to trigger the notice requirements. See Katz Decl., Ex. A, ¶ X (Interrelationship of Claims Provision). They also agree that the California and New Jersey law suits constitute a claim as defined by the policy and that Plaintiff received notice of both the California and New Jersey actions within the 2007-2008 policy (California in December 2007 and New Jersey in February 2008).

was actually prejudiced by the late notice to avoid extending coverage for the claims. Plaintiffs liken the applicable policy to the policies at issue in Cooper v. Government Employees Ins. Co., 237 A.2d 870, 51 N.J. 86 (1968) and Resolution Trust Corp. v, Moskowitz, 868 F.Supp. 634 (D.N.J. 1994), which required a demonstration of "appreciable prejudice" where coverage was denied due to untimely notice. Plaintiffs contend that Twin City cannot demonstrate prejudice and, therefore, seek a declaration of coverage for the California and New Jersey claims.

### III. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a

4

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. Analysis

At the heart of the dispute is a fundamental disagreement over the terms of the 2007-2008 Renewal Policy that the parties agree govern the Plaintiffs' request for

coverage for the New Jersey and California Claims.  Principally, the issue is whether the language of the 2007-2008 policy should be construed as a "claims made" policy.  During the course of oral argument several concessions were made that neatly tailor the issues before the Court.  First, Plaintiffs agreed that if Endorsement Number 4, attached only to the Expired 2006-2007 Policy, is incorporated into the operative 2007-2008 policy, then the 2007-2008 policy must be construed as a claims made policy; a fact that Plaintiffs admit leaves them without coverage for the claims.  Second, if Endorsement Number 4 is not incorporated into the operative policy, the parties agree that the Court must determine whether the policy is a claims made policy.  Finally, the parties agree that if the policy is not construed as a claims made policy, then the issue before the Court is whether there is a genuine issue of fact related to the temporal reasonableness of Plaintiffs' notice and/or the prejudice suffered by Twin City as a result of the late notice.

### A. Standard of Review for Insurance Contracts

The interpretation of contracts is a matter of law. Sealed Air Corp. v. Royal Indemnity Co., 961 A.2d 1195, 1203, 404 N. J. Super. 363 (App. Div. 2008).  Several hallmarks of insurance contract interpretation inform the interpretation of the 2007-2008 policy.  "[W]hen interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006)(quoting Nav-its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005)).  New Jersey law requires "broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations." Sealed

coverage for the New Jersey and California Claims.  Principally, the issue is whether the language of the 2007-2008 policy should be construed as a "claims made" policy.  During the course of oral argument several concessions were made that neatly tailor the issues before the Court.  First, Plaintiffs agreed that if Endorsement Number 4, attached only to the Expired 2006-2007 Policy, is incorporated into the operative 2007-2008 policy, then the 2007-2008 policy must be construed as a claims made policy; a fact that Plaintiffs admit leaves them without coverage for the claims.  Second, if Endorsement Number 4 is not incorporated into the operative policy, the parties agree that the Court must determine whether the policy is a claims made policy.  Finally, the parties agree that if the policy is not construed as a claims made policy, then the issue before the Court is whether there is a genuine issue of fact related to the temporal reasonableness of Plaintiffs' notice and/or the prejudice suffered by Twin City as a result of the late notice.

### A. Standard of Review for Insurance Contracts

The interpretation of contracts is a matter of law. Sealed Air Corp. v. Royal Indemnity Co., 961 A.2d 1195, 1203, 404 N. J. Super. 363 (App. Div. 2008).  Several hallmarks of insurance contract interpretation inform the interpretation of the 2007-2008 policy.  "[W]hen interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006)(quoting Nav-its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005)).  New Jersey law requires "broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations." Sealed

Air Corp., 961 A.2d at 1203, 404 N. J. Super. 363.

The reasonable expectations of an insured are best measured by the language on the Declarations Page.  Lehrhoff v. Aetna Cas. & Surety Co., 638 A.2d 889, 892, 271 N.J.Super. 340, 346-47 (App. Div. 1994) (declarations page of singular importance); accord Araya v. Farm Family Cas. Ins. Co., 801 A.2d 1194, 1198, 353 N.J. Super. 203, 210 (App. Div. 2002) ("We are, therefore, convinced that it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage."). However, while "courts should construe insurance policies in favor of the insured, they 'should not write for the insured a better policy of insurance than the one purchased.' " Longobardi v. Chubb Ins. Co.,  582 A.2d 1257, 1260, 121 N.J. 530 (1990) (quoting Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 562 A.2d 208, 214, 116 N.J. 517 (1989)).

In Zuckerman, the New Jersey Supreme Court identified the elements of a claims made policy. 495 A.2d 395, 100 N.J. 304.  A claims made policy provides coverage "for acts or omissions occurring at any time provided that the claim be asserted and reported to the carrier during the policy period." Id.   Courts must strictly enforce the notice provision of claims made policies.  Id.; see also, Russoniello v. Twin City Fire Insurance Co., No. 09-CV-452 (PGS), 2010 WL 2024084 (D.N.J. May 20, 2010) (upholding Twin City's (same defendant) denial of coverage predicated upon untimely notice in a claims made policy).

### B. The 2007-2008 Policy

The first issue is whether the Renewal Policy incorporated Endorsement Number 4 of the Expired Policy.  Endorsement Number 4 in the 2006-2007 policy provides:

> **ENDORSEMENT No. 4**
> Section VIII NOTICE OF A CLAIM (A) is deleted and replaced with the following:
> (A) As a condition precedent to coverage under this Policy, the Insureds shall give the Insurer written notice of any Claim as soon as practicable, but in no event later than sixty (60) days after the termination of the Policy Period, or Extended Reporting Period as described in Section IX. Such notice shall specify the Coverage Part under which notice is being given.

Katz Decl., Ex. A, Endorsement No. 4.

The parties agree that this endorsement provides for claims made coverage. The Declaration Page of the 2007-2008 Policy plainly incorporates Endorsement 4 of the 2006-2007 Expired Policy. The 2007-2008 policy states, *inter alia*, in the Renewal Declarations the following:

> NOTICE: the liability coverage parts scheduled in item 4: Liability coverage elections provide <u>claims made coverage</u>, except as otherwise specified herein, coverage applies only to a claim first made against the insureds during the policy period and payment of defense costs reduce the limit of liability. Notice of a claim must be given to the insurer as soon as practicable, provided that such notice is given not later than 60 days after any manager becomes aware that such claim has been made . . . <u>The terms, conditions, and exclusions of the Expired Policy and any additional endorsements of Coverage Part(s) or Coverage Feature(s) attached hereto shall apply to the Renewal Policy Period.</u>

Katz Decl., Ex. B (Renewal Declaration 2007-2008 Policy) (emphasis added).

Although the above language plainly incorporates the terms of the Expired Policy, Plaintiffs contend that this language does not explicitly include Endorsement Number 4. Plaintiffs predicate this argument on the fact that the language in the declaration only explicitly includes "any additional endorsements of Coverage Part(s) or Coverage Feature(s) attached <u>hereto</u> shall apply to the Renewal Policy Period." (emphasis added). Under Plaintiffs' analysis, only the endorsements attached to the Renewal Policy apply;

8

Endorsement Number 4 is attached only to the Expired Policy.  Plaintiffs' interpretation discounts the plain language of the declaration and is flawed.  Importantly, definition of "Policy" is defined in the Renewal Policy in Item 10, Additional Definitions as specifically including any endorsement attached to the Expired Policy:

> For the purposes of coverage afforded during the Renewal Policy Period, the word "Policy" shall mean the <u>Expired Policy (including any endorsements attached thereto</u>) as amended by this Renewal Declaration together with any endorsements attached to this Renewal Declaration.

Katz Decl., Ex B (Item 10) (emphasis added).

The incorporation of Endorsement Number 4 is supported by a plain reading of the Renewal Policy, which incorporates "any endorsements attached" to the Expired Policy.  The language is not ambiguous and Endorsement Number 4 is incorporated into the Policy.

However, to the extent that an ambiguity exists given that the notice provision contained in Endorsement Number 4 differs from the notice provision contained in the Preamble of the Renewal Declarations, the Court finds that the reasonable expectations of the insured require strict construction of the notice provision.  In this case, the time limit contained in the Renewal Declarations Preamble actually gives the insured <u>less</u> time to report the claim than the provision in Endorsement Number 4.  As a result, adopting Plaintiffs' ambiguity argument, the insured should have reasonably expected claims made coverage and to give notice within 60 days of becoming aware of the claim.  <u>See</u> <u>Araya</u>, 801 A.2d 1194, 1198, 353 N.J. Super. 203, 210 (reasonable expectations of ensured best measured by declarations page.); <u>see also</u> <u>Zacarias v. Allstate Ins. Co.</u>, 775 A.2d 1262, 1264-65, 168 N.J. 590 (2001) (where terms to a policy are ambiguous, courts

should "interpret the contract to comport with the reasonable expectations of the insured.")

Plaintiffs failed to comply with both the notice provision in the Renewal Declarations and the notice provision in Endorsement Number 4. And Plaintiffs' contention that the policy be construed as an occurrence policy, or a discovery policy, overlooks the plain language of the policy that specifically provides for "claims made coverage. As explained by the New Jersey Supreme Court in Zuckerman, the policy language here is consistent with claims made coverage and cannot be construed as providing "occurrence" based coverage:

> In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

Id. 495 A.2d at 398 (quoting S. Kroll, The Professional Liability Policy 'Claims Made,' 13 Forum 842, 843 (1978)). The Twin City policy language is consistent with claims made coverage, as coverage attaches when the claim is filed; "coverage applies only to a claim first made against the insureds during the policy period . . . [.]" Katz Decl., Ex. B (Renewal Declaration 2007-2008 Policy). The plain language of the policy does not provide for occurrence based coverage. Instead, coverage attached when the California action was filed.

Moreover, the Renewal Policy plainly self-identifies as providing "claims-made coverage." Katz Decl., Ex. B (Renewal Declaration 2007-2008 Policy). This distinguishes the instant policy from the policy in Moskowitz, 868 F.Supp. 634, relied upon by Plaintiffs. In Moskowitz, a district court reconsidered its holding that a policy

10

was a claims made policy. Id. at 638. Rather, the court found that the policy actually provided discovery protection. Id. The Moskowitz policy stated under a heading titled "Discovery" that "[t]his bond applies to losses discovered by the Insured during the bond period." Id. Notice was required "[a]t the earliest practical moment, not to exceed 30 days, after discovery of loss . . . [.]" Id.

Although the notice provision in the Preamble of the Twin City policy is similar to the notice provision of the Moskowitz policy, the two policies provide different forms of insurance. The Moskowitz policy is not only self identified as a "discovery" policy, but "it is a specialized form of insurance known as a banker's blanket bond . . . [t]he history of the banker's blanket bond confirms that it is a totally different form of insurance from claims-made insurance." Id. (internal quotations omitted).

Here, the Twin City policy states in the Renewal Declarations page that it provides claims made coverage. At the very least, the policy requires notice of a claim to be made "as soon as practicable, provided that such notice is given not later than 60 days after any manager becomes aware that such claim has been made."[2] Although this notice language is often seen in occurrence based policies, it is not exclusive to that type of coverage. See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E. 2d 28, 29 (Mass. 1990) (explaining that a provision that requires "notice of the claim be given to the insurer "as soon as practicable" . . . is almost always found in occurrence policies and frequently is found in claims-made policies); see also Alpine Home Inspections, LLC v.

---

[2] Plaintiffs repeatedly characterize the notice reporting period as "as soon as practicable" without recounting the finite period that follows: "but in no event later than 60 days . . . [.]" Without the inclusion of Endorsement Number 4, the policy does not specifically require notice to be given within the policy period, an essential component of claims-made coverage. See Zuckerman, 495 A.2d 395.

Underwriters at Lloyds of London, 2008 WL 4963518 (N.J. Super. App. Div., Nov. 24, 2008).

Plaintiffs' contention that the operative language that requires notice "as soon as practicable" triggers the "appreciable prejudice" doctrine overlooks Zuckerman's explanation of when coverage attaches in a claims made policy and the plain language of the Twin City policy. Plaintiffs did not timely notify Twin City because it "thought that [the claims] would be settled" and because it did not think it had coverage for the claims. Katz Decl., Ex. I; MTG's Statement, Ex. A, p.40. Given that Plaintiffs never misconstrued the policy, and that Plaintiffs failed to comply with the notice provision in either the Preamble and/or the endorsement, interpreting the policy in a manner that permits the late filing discounts the independently unambiguous notice provisions and impermissibly results in writing a better policy for the insured than it purchased. Progressive Cas. Ins. Co. v. Hurley, 765 A.2d 195, 166 N.J. 260 (2001). As a result, Plaintiffs should have reasonably expected claims made coverage.

## V. CONCLUSION

Given that the operative policy is a claims made policy and that the insured should reasonably expect claims made coverage, under New Jersey law, Plaintiffs' untimely notice forfeits coverage for the claims. Zuckerman, 495 A.2d 395, 100 N.J. 304. Summary judgment is granted in favor of Twin City. An appropriate Order shall issue.

Dated: September 30, 2010

                                            /s/ Joseph H. Rodriguez
                                            Hon. Joseph H. Rodriguez,
                                            United States District Judge